# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

IN RE: )
)
KEVIN L. ADAMS )
) No. 05 C 1801
Debtor. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Appellant Kevin Adams' ("Adams") appeal of an order issued by a bankruptcy court. For the reasons stated below, we affirm the bankruptcy court.

## BACKGROUND

Appellee MidAmerica Bank, fsb (MidAmerica") held a mortgage lien on property owned by Adams that is located in Aurora, Illinois ("Property"). Adams filed a Chapter 13 petition in the bankruptcy court in August of 2003. In December of 2003, MidAmerica filed a motion in those bankruptcy proceedings to modify the automatic stay in the proceedings to allow MidAmerica to institute a foreclosure of mortgage case against the Property. The motion to modify the stay was granted and MidAmerica subsequently filed a foreclosure of mortgage case. Judgment of

foreclosure was entered on August 5, 2004, and the judgment provided that the redemption period expired on November 8, 2004.

Adams subsequently filed a Chapter 13 bankruptcy petition on November 22, 2004 instituting the present action. MidAmerica claimed that before the Property was sold on November 23, 2004, MidAmerica conducted a search for Adams' name to make sure that he had not filed another Chapter 13 bankruptcy and MidAmerica discovered no such filing by Adams. On November 23, 2004, the Property was auctioned at a Sheriff's sale and was sold to a third party and on December 8, 2004, the state court entered an order approving the sale. After the sale was confirmed, Adams' counsel informed MidAmerica that Adams had filed a Chapter 13 petition for bankruptcy before the sale of the Property, but that the filing had been made under the name of "Keith L. Adams" rather than "Kevin L. Adams."

MidAmerica then appeared before the bankruptcy court in the instant action and filed a motion to annul the automatic stay in the instant action in order to validate the final approval by the state court of the sale of the Property on December 8, 2004. We note that Adams claims that the sale was confirmed on December 8, 2005, (Applt. 2), but that such a date is clearly inaccurate, in that it is in the future. MidAmerica pointed out in its motion to annul the stay that Adams was in substantial default on the mortgage for the Property prior to the filing of his petition for bankruptcy. The bankruptcy court granted MidAmerica's motion to annul the stay, noting that the court lacked jurisdiction to nullify the state court order

approving the sale. Adams filed a motion with the bankruptcy court seeking a rehearing and a vacation of the order granting MidAmerica's motion to annul. The bankruptcy court denied the motion for rehearing and the motion to vacate. Adams is now before this court to appeal the bankruptcy court's ruling granting MidAmerica's motion to annul and denying the motion for a rehearing and vacation of the order.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *In re A-1 Paving and Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997).

## DISCUSSION

Adams argues that the bankruptcy court erred in concluding that it lacked jurisdiction over the third party-purchaser of the property. Adams argues that the automatic stay under 11 U.S.C. § 362 ("Section 362") encompassed the Property. Pursuant to 11 U.S.C. § 541, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Adams argues that the Property was thus part of the bankruptcy estate on

November 22, 2004, before the Property was sold and was covered by the automatic stay. Under Section 362, the stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Adams argues that the sale of the Property, which is part of the bankruptcy estate, constitutes an exercise of control over the property of the estate and falls within the prohibition of Section 362.

Adams acknowledges that he failed to notify MidAmerica of his filing of bankruptcy on November 22, 2004 until after the sale and the approval of the sale by the state court. Adams claims that his attorney attempted to send a letter to MidAmerica informing it of Adams' filing, but that "[t]he letter was inadvertently sent via the wrong fax number. . . ." (Mot. 9). Adams argues that, regardless of the fact that MidAmerica did not receive notice of his filing prior to the sale, the automatic stay is effective without the necessity of notice to any party that would be subject to the stay. *See In re Garcia*, 23 B.R. 266, 267 (N.D. Ill. 1982)(stating that notice to creditor of stay is not required).

I. *Rooker-Feldman* Doctrine

The bankruptcy court did not, as Adams suggests, find that the automatic stay was not in effect on November 23, 2004 when the Property was sold. Rather, the bankruptcy court pointed out that it was not disputed that at that juncture, the Property had already been sold and that the sale had already been approved by the

4

state court. (1/15/05 Hr. tr. 4-5). The bankruptcy court acknowledged that a third-party purchaser had acquired a deed in the Property and that the state court entered an order approving the sale. (1/15/05 Hr. tr. 6-7). The bankruptcy court properly concluded that it did not have jurisdiction over the state court matter and that it did not have jurisdiction over the third-party purchaser. The bankruptcy court granted the annulment of the automatic stay, but did so with the express proviso that, if Adams pursued his remedies in the state court and the state court vacated the sale, Adams could renew his arguments before the bankruptcy court. (1/15/05 Hr. tr. 4-5). Also, in denying Adams' motion to vacate, the bankruptcy court denied the motion without prejudice, stating that if Adams was able to get the state court to vacate the confirmation of the sale, Adams could renew his motion to vacate with the bankruptcy court. (2/4/05 Hr. tr. 5).

The bankruptcy court stated that under the *Rooker-Feldman* doctrine, a federal bankruptcy court does not have jurisdiction to reverse the final orders of state courts and that a judgment of foreclosure that has proceeded to an order confirming a sale is a final order. Under the *Rooker-Feldman* Doctrine, the lower federal courts are precluded from "jurisdiction over claims seeking review of a state court judgment" and over claims "inextricably intertwined" with a state court judgment. *Rooker v. Fidelity Trust*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). In determining whether Rooker-Feldman is applicable, an inferior federal court must determine whether the claim

5

seeks to "set aside a state court judgment" or whether the claim is in fact "an independent claim." *4901 Corporation v. Town of Cicero*, 220 F.3d 522, 527-28 (7th Cir.2000). If a claim in federal court seeks to set aside a previous state court judgment, regardless of whether the state court judgment is "erroneous or even unconstitutional," an inferior federal court lacks jurisdiction under *Rooker-Feldman*. *Id.*

In the instant action, the bankruptcy court properly concluded that it lacked jurisdiction to issue any ruling that would have the effect of nullifying the state court order confirming the sale of the property. *See Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995)(stating that "the *Rooker-Feldman* doctrine . . . is based on the principle that inferior federal courts cannot reexamine the decisions of state tribunals in civil litigation."); *In re Alpern*, 191 B.R. 107, 110 (N.D.Ill. 1995)(stating that "[i]t is clear that [the district court] and the bankruptcy court have no power to vacate a state court judgment" and that "[a]ny attempt to do so would run afoul of the *Rooker-Feldman* doctrine, which teaches that lower federal courts have no jurisdiction to reexamine the decisions of state tribunals in civil litigation."). Adams argues that the *Rooker-Feldman* doctrine does not apply in the instant action. Adams acknowledges that, if he is indeed attempting to set aside a state court judgment, he is barred by the *Rooker-Feldman* doctrine. (Applt. 10). Adams argues, however, that the doctrine does not apply because "prior to the bankruptcy, the court never entered an order approving the sheriff's [sic] sale" and that "[i]t is undisputed

that the order signed by the state court confirming the sheriff's [sic] sale of the Debtor's home was signed after the bankruptcy filing and, therefore [sic] violated § 362." (Applt. 10). Adams acknowledges that the state court did ultimately sign an order confirming the sale and that the order is currently in effect and was in effect when the motion to annul the stay was filed. Thus, whether the state court issued the order before or after the filing of the instant proceedings is not relevant. The fact remains that Adams is seeking to nullify the legal effect of the state court order confirming the sale of the Property.

Adams also cites *Weniger v. Arrow Financial Servs. LLC*, 2004 WL 2609192 (N.D. Ill. 2004) arguing that in *Weniger* "the court faced a similar issue as the [sic] instant case." (Applt. 12). The court in *Weniger* did conclude that the plaintiff's claims were not barred under the *Rooker-Feldman* doctrine. *Id.* at *2. However, the plaintiff in *Weniger* was not engaged in bankruptcy proceedings as in the instant action. Rather, the plaintiff in *Weniger* had filed a claim in a district court alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq. Id.* at *1. Also, the court in *Weniger*, in concluding that the *Rooker-Feldman* doctrine was not applicable, noted that the state court decision at issue was a dismissal of the defendant's suit for lack of prosecution and that "[h]is claim is wholly distinct from the final disposition of [the defendant's] state court suit against" the plaintiff. *Id.* at *7. In the instant action, unlike in *Weniger*, the state court action at issue is a final order confirming the sale of the property. The court in *Weniger*

7

also referred to a specific rule of law applied to FDCPA claims arising from prejudgment collection activities that has no application to the facts in the instant action. *Id.* Thus, *Weniger* is distinguishable from the instant action. Also, the ruling in *Weniger* is not controlling precedent.

## II. Whether Sale is Void

Adams also argues that any order that violates a Section 362 automatic stay is void *ab initio* and therefore the state court's order confirming the sale of the property is invalid. In support of such a proposition, Adams cites *Matthews v. Rosene*, 739 F.2d 249 (7th Cir. 1984). However, in *Matthews* the court was never presented with the issue of whether or not the bankruptcy court had jurisdiction to declare a state court's order void. Rather, the court was presented with the limited issue of whether or not the lower courts were correct in finding that the equitable doctrine of laches barred the petitioner from even seeking such a remedy. *Id.* at 250-51. Adams cites a host of other cases, none of which are controlling precedent.

## III. Bankruptcy Court's Discretion and Motion to Vacate

The bankruptcy court also acted within its discretion in granting the motion to annul the stay. At the hearing on the motion to annul the stay, MidAmerica specifically asked that the court, in its "discretion," grant the motion due to the facts of the case and that there was a substantial pre-petition default. (1/15/05 Hr. tr. 3).

The bankruptcy court, in its ruling, did not specifically state that it was "exercising its discretion," but no such explicit reference is required. Pursuant to 11 U.S.C. § 362(d) a court may issue an order "terminating, annulling, modifying, or conditioning" an automatic stay. 11 U.S.C. § 362(d). The determination of whether an automatic stay should be lifted "pursuant to Section 362(d) is committed to the discretion of the bankruptcy court, and the decision may be overturned only upon a showing of abuse of discretion." *Christian v. Citibank, F.S.B.*, 231 B.R. 288, 289 (N.D. Ill. 1999). In the instant action, the bankruptcy court examined the facts, noting, for example, the confusion on MidAmerica's part due to Adams' failure to file under the correct name. (1/15/05 Hr. tr. 4). The bankruptcy court also noted the fact that there was already a third-party purchaser. (1/15/05 Hr. tr. 4). The bankruptcy court properly exercised its discretion in granting the motion to annul the stay. *See In re Syed*, 238 B.R. 133, 144 (Bankr. N.D. Ill. 1999)(stating that "[t]he bankruptcy court has wide latitude to grant relief from the automatic stay including the ability to retroactively annul the stay."); *In re Pleasant*, 320 B.R. 889, 894 (Bankr. N.D. Ill. 2004)(stating that "[t]he discretion to retroactively annul the stay lies with the bankruptcy court.").

In addition, Adams did not present any of the arguments to the bankruptcy court when it granted the motion to annul the stay. The bankruptcy court thus correctly denied the motion to vacate because none of the arguments in the motion were presented by Adams in his answer to the motion to annul the stay. The

9

bankruptcy court commented for the first time about the cases cited by Adams and the arguments which Adams was presenting for the first time in his motion to vacate. (2/4/05 Hr. tr. 4); *See also In re Syed*, 238 B.R. at 139(stating for motion to vacate before the bankruptcy court that "Rule 59(e) . . . is not a 'vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment.'").

## IV. Equities Before the Court

Finally, the bankruptcy court considered the equities of the facts before it and concluded that the proper decision was to grant the motion to stay. In *Matthews*, which is cited by Adams himself, the Court specifically stated that "[a] bankruptcy court must be guided by equitable principles in exercising its jurisdiction." 739 F.2d at 251. In the instant action, the bankruptcy court correctly concluded that the equities do not weigh in Adams' favor. Adams admitted in his answer to the motion to annul the stay that Adams was served on April 8, 2004, with notice of the fact that MidAmerica had filed a foreclosure of mortgage case. (Ans. Mot. Ann. Par. 6). Adams admitted in his answer to the motion to annul the stay that he was informed of the judgment of foreclosure hearing, but that he never appeared at the hearing and never filed any pleading in the state court foreclosure action. (Ans. Mot. Ann. Par.

7). Adams admitted in his response to the motion to annul the stay that he was served with notice of the scheduled sale of the Property. (Ans. Mot. Ann. Par. 8). Despite the fact that Adams took no part in the foreclosure proceedings, and had notice of the scheduled sale to a potential third-party, Adams waited to file his bankruptcy petition until the day before the scheduled sale. Not only did Adams wait until the day before the sale, but he also failed to notify MidAmerica of his filing. In a letter attached to Adams' answer to the motion to annul the stay, Adams' counsel actually apologizes for the "eleventh hour maneuvering." (Ans. Mot Ann. Ex C). The letter explains that Adams first walked into his counsel's office on November 20, 2004. (Ans. Mot Ann. Ex C). Adams also admits that through his own error or his counsel's error he sent a notice intended for MidAmerica to an incorrect fax number. (Ans. Mot. Ann. Par. 12).

In addition, Adams failed to use his proper name when filing the instant bankruptcy action. MidAmerica claims that, before the sale of the Property MidAmerica conducted a name search to make sure that Adams had not filed for bankruptcy again. Adams acknowledged in his answer to the motion to annul that the documents pertaining to the instant bankruptcy were "inadvertently given the name 'Kevin' a nickname of Keith Adams on some of the documents filed, instead of his proper name, 'Kevin.'" (Ans. Mot Ann. Par 12). Adams claims that he eventually corrected the mistake and that he "apologized for the confusion." (Ans. Mot. Ann. Par. 12). Also, Adams has not contested the facts presented at the hearing before the bankruptcy court on the motion to annul the stay indicating that the

default on the Mortgage since January of 2003 was approximately $31,000 and that there was a substantial pre-petition default on the mortgage. Finally, as is evidenced by the letter from Adams' counsel to MidAmerica informing it of the instant bankruptcy action, Adams waited until December 26, 2004, after the state court approved the sale, to inform MidAmerica of the bankruptcy filing. (Ans. Mot Ann. Ex C). Thus, in summation, according to Adams' own allegations, exhibits, and admissions, Adams ignored the state foreclosure proceedings including the sale of the Property despite proper notice of the proceedings and sale. At the last minute before the sale, he filed a bankruptcy petition. Adams failed to notify MidAmerica of the instant action and failed to file the bankruptcy petition using his correct name which would have enabled MidAmerica to discover the filing. Only months after the sale was conducted, and after the sale to the third-party was approved by the state court did Adams finally inform MidAmerica of the bankruptcy petition. The bankruptcy court considered all of those facts including the "mess"that was created by the fact that MidAmerica was unaware of the bankruptcy filing prior to the sale and noting Adams' usage of the wrong name. (1/15/05 Hr. tr. 2). The court noted that since Adams allowed the state proceedings to proceed to the confirmation of the sale, the proper avenue for Adams at that juncture was to go before the state court. (1/15/05 Hr. tr. 4-5). The bankruptcy court thus properly considered the equities in granting the motion to annul the stay. Based upon all of the above analysis, we conclude that the bankruptcy court did not err in its orders granting MidAmerica's motion to annul the stay and denying Adams' motion for a rehearing and denying

Adams' motion to vacate.

## CONCLUSION

Based on the foregoing analysis, we affirm the bankruptcy court.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 1, 2005